Filing # 88967070 E-Filed 05/03/2019 02:36:00 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR DUVAL COUNTY, FLORIDA

**WOOD, ATTER & WOLF, P.A.**, on behalf of
itself and all others similarly situated,

    Plaintiff,

v.

**SOLANTIC CORPORATION d/b/a
CARESPOT EXPRESS HEALTHCARE**,
a Delaware Company,

    Defendant.

_____/

CASE NO.: 16-2019-CA-003349-XXXX-MA
CIVIL DIVISION

**CLASS REPRESENTATION
JURY TRIAL DEMANDED
INJUNCTIVE RELIEF SOUGHT**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, WOOD, ATTER & WOLF, P.A., by and through the undersigned Counsel, and files this Class Action Complaint against Defendant, Solantic Corporation d/b/a Carespot Express Healthcare ("CARESPOT"), stating and alleging as follows:

### I.    NATURE OF ACTION

1.    In 2009, Congress passed the American Recovery and Reinvestment Act to help stimulate the ailing economy. The Reinvestment Act included a section known as the Health Information Technology for Economic and Clinical Health Act ("HITECH ACT"), 45 CFR 164.524 (c)(4). The HITECH Act was intended to reduce the costs of sharing and obtaining medical records for both patients and medical care providers. This class action challenges the business practices of CARESPOT, a medical services and records company, uniformly charging and collecting from Plaintiff and the Class unlawful amounts for electronically stored medical records in violation of the HITECH ACT.

2.    In 2016, the United States Department of Health and Human Services ("HHS") was asked to provide guidance on copy charges for medical records under the HITECH Act. HHS

determined and advised all covered entities and their business associates that the maximum they can charge to provide an electronic copy of all their medical records (regardless of number of pages or size of the file) is $6.50 (inclusive of all labor, supplies, and postage), *unless* the covered entities individually track and calculate the actual allowable costs to fulfill each request; or develop a schedule of costs based on average allowable costs (labor, supplies, postage) to fulfill standard requests.[1] In other words, if a covered entity does not individually track and calculate its actual or average costs for producing electronic records, the highest amount it can charge is $6.50.

3.      Upon information and belief, CARESPOT does not keep records of its actual or average (by developing a schedule) costs associated with producing electronic copies of medical records.   Therefore, pursuant to the 2016 HHS opinion and the HITECH Act, the most CARESPOT can charge individuals is $6.50. Instead of following this guideline, CARESPOT uniformly, routinely, and systematically charges amounts in excess of $6.50, in violation of the HITECH Act which constitutes violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Fla. Stat. § 501.201, *et seq.* and the Florida Consumer Collections Practice Act (FCCPA).

## II.      JURISDICTION AND VENUE

4.      This is an action for damages that exceed $15,000, and an action for declaratory and injunctive relief pursuant to Fla. Stat. § 501.201, *et seq.*

5.      Plaintiff, WOOD, ATTER & WOLF, P.A., is the aggrieved party who brings this class action on behalf of itself and others similarly situated against Defendant, CARESPOT pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3), to protect the rights of other persons, and to protect the public interest.

---

[1] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html#maximumflatfee

6.     Defendant, Solantic Corporation d/b/a Carespot Express Healthcare, has and continues to conduct business throughout the State of Florida at all relevant times, including Duval County, Florida.

7.     Actions giving rise to the named Plaintiff's claims occurred in Duval County, Florida, which provides for jurisdiction in the Fourth Judicial Circuit in and for Duval County, Florida.

## III.     PARTIES

8.     Plaintiff, WOOD, ATTER & WOLF, P.A., is a Florida Professional Association doing business in Duval County, Florida.

9.     At all times material hereto, Plaintiff was a "consumer" as defined by Fla. Stat. § 559.55(8).

10.     Defendant, CARESPOT, is a Delaware corporation doing business in Duval County and throughout the State of Florida as a medical records provider at all times relevant to this action. CARESPOT provides urgent care medical services and billing throughout the United States, with multiple locations in Florida. At all times material hereto, CARESPOT was a "person" who attempted to collect debts in Florida pursuant to the FCCPA.

11.     CARESPOT's principal place of business is located at 115 East Park Drive, Suite 300, Brentwood, TN 37027. On information and belief, CARESPOT is a corporate citizen of the state of Tennessee and the state of Delaware.

## IV.     FACTUAL ALLEGATIONS

12.     The HITECH Act was signed into law on February 17, 2009, with a goal of motivating the implementation of electronic health records and supporting the use of technology in the medical industry within the United States. The HITECH Act anticipated the expansion in

3

the exchange of electronic protected health information between doctors, hospitals, and other

entities that store electronic protected health information for the sole reason of cutting down on

the cost of healthcare by sharing records electronically.

13.     The HITECH ACT itself, 45 CFR 164.524 (c)(4), lists what the charges for medical

records requested in electronic format are under the HITECH ACT:

> Fees. If the individual requests a copy of the protected health information or agrees to a
> summary or explanation of such information, the covered entity may impose a reasonable,
> cost based fee, provided that the fee includes only the cost of:
>
> (i)     Copying, including the cost of supplies for and labor of copying, the protected
>         health information requested by the individual;
> (ii)    Postage, when the individual has requested the copy, or the summary or
>         explanation, be mailed; and
> (iii)   Preparing an explanation or summary of the protected health information, if agreed
>         to by the individual as required by paragraph (c)(2)(ii) of this section.

14.     After the HITECH Act was implemented, covered entities struggled with what were

the permissible charges for electronic medical requests made pursuant to the above provisions of

the HITECH Act under 45 CFR 164.524 (c)(4).  A major difficulty was the tracking of such costs

and expenses.

15.     In 2016, the HHS provided an interpretation of the above mentioned 45 CFR

164.524 (c)(4), to provide a definitive declaration on what amounts covered entities could charge

for electronic medical records requests[2]:

> Actual costs. A covered entity may calculate actual labor costs to fulfill the request, as long
> as the labor included is only for copying (and/or creating a summary or explanation if the
> individual chooses to receive a summary or explanation) and the labor rates used are
> reasonable for such activity. The covered entity may add to the actual labor costs any
> applicable supply (e.g., paper, or CD or USB drive) or postage costs. Covered entities that
> charge individuals actual costs based on each individual access request still must be
> prepared to inform individuals in advance of the approximate fee that may be charged for
> providing the individual with a copy of her PHI. An example of an actual labor cost
> calculation would be to time how long it takes for the workforce member of the covered
> entity (or business associate) to make and send the copy in the form and format and manner

---

[2] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html#maximumflatfee.

requested or agreed to by the individual and multiply the time by the reasonable hourly rate of the person copying and sending the PHI. What is reasonable for purposes of an hourly rate will vary depending on the level of skill needed to create and transmit the copy in the manner requested or agreed to by the individual (e.g., administrative level labor to make and mail a paper copy versus more technical skill needed to convert and transmit the PHI in a particular electronic format).

<u>Average costs.</u> In lieu of calculating labor costs individually for each request, a covered entity can develop a schedule of costs for labor based on average labor costs to fulfill standard types of access requests, as long as the types of labor costs included are the ones which the Privacy Rule permits to be included in a fee (e.g., labor costs for copying but not for search and retrieval) and are reasonable. Covered entities may add to that amount any applicable supply (e.g., paper, or CD or USB drive) or postage costs.

This standard rate can be calculated and charged as a per page fee only in cases where the PHI requested is maintained in paper form and the individual requests a paper copy of the PHI or asks that the paper PHI be scanned into an electronic format. Per page fees are not permitted for paper or electronic copies of PHI maintained electronically. OCR is aware that per page fees in many cases have become a proxy for fees charged for all types of access requests – whether electronic or paper – and that many states with authorized fee structures have not updated their laws to account for efficiencies that exist when generating copies of information maintained electronically. This practice has resulted in fees being charged to individuals for copies of their PHI that do not appropriately reflect the permitted labor costs associated with generating copies from information maintained in electronic form. Therefore, OCR does not consider per page fees for copies of PHI maintained electronically to be reasonable for purposes of 45 CFR 164.524(c)(4).

<u>Flat fee for electronic copies of PHI maintained electronically.</u> A covered entity may charge individuals a flat fee for all requests for electronic copies of PHI maintained electronically, **provided the fee does not exceed $6.50,** inclusive of all labor, supplies, and any applicable postage. Charging a flat fee not to exceed $6.50 is therefore an option for entities that do not want to go through the process of calculating actual or average allowable costs for requests for electronic copies of PHI maintained electronically.

16.     Thus, the HHS advised that unless covered entities track and charge actual or average calculated costs for the production of electronically stored medical records in electronic format pursuant to 45 CFR 164.524 (c)(4), the most they can charge is $6.50.

17.     CARESPOT possesses a statutory duty to only charge the amounts authorized for electronically stored medical records requested in electronic format as set forth specifically in 45 CFR 164.524 (c)(4) and clarified by the HHS's 2016 guidance letter.

18.    On February 11, 2019, Plaintiff requested that CARESPOT provide them with a copy of their client's electronic medical records in electronic format pursuant to the HITECH Act, 42 U.S.C.A. §17935 (e)(1) and its implementing regulations, 45 CFR 164.524(c)(4). **EXHIBIT A.**

19.    Upon information and belief, CARESPOT does not calculate actual labor costs to fulfill the requests, nor do they add in the actual cost of supplies and postage. Additionally, CARESPOT does not charge average costs after developing a schedule of costs for labor based on average labor costs to fulfill standard types of access requests. Therefore, the most CARESPOT can charge individuals for electronic medical record requests is $6.50.

20.    In or around February 2019, CARESPOT sent Plaintiff a standard form bill (Exhibit B), and instead of charging $6.50, CARESPOT deceptively charged Plaintiff $25.75, the amount authorized for a paper copy medical record request under the Florida Patient Records Rule (Fla. Admin. Code R. 64B8-10.003). However, the per page amount does not apply to requests made under the HITECH Act.

21.    CARESPOT's billing letter appears to be a standardized form letter generated by a computer.

22.    CARESPOT unfairly and deceptively charged and collected from Plaintiff and others similarly situated fees in excess of the amounts authorized for requests for electronic medical records in electronic format.

23.    Plaintiff's request for electronic medical records in electronic format was fulfilled by CARESPOT, no third-party venders were involved in the billing, collection, retrieval, or communications between CARESPOT and Plaintiff.

24.     CARESPOT charged and Plaintiff paid the deceptive HITECH electronic medical record fee. Plaintiff paid the excessive fee in order to obtain the requested electronic medical records because CARESPOT's universal policy is to not send the records until after the invoice is paid, and Plaintiff feared that refusing to pay the copy fees would delay the receipt of the needed records.

25.     Additionally, CARESPOT's standard form billing letter violates the Florida Consumer Collection Practices Act ("FCCPA").

26.     The FCCPA Fla. Stat. § 559.72(9) states that "no person shall...Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist."

27.     Here, CARESPOT's standard form billing letter asserts the right to impose claims on amounts above $6.50 when CARESPOT does not calculate actual labor costs to fulfill the requests, nor do they add in the actual cost of supplies and postage. Additionally, CARESPOT does not charge average costs by developing a schedule of costs for labor based on average labor costs to fulfill standard types of access requests. Therefore, the most CARESPOT can bill for electronic medical record requests made under the HITECH Act is $6.50, and to charge more violates Fla. Stat. § 559.72(9).

28.     Plaintiff seeks declaratory relief that CARESPOT's conduct violates the FCCPA, and corresponding injunctive relief prohibiting CARESPOT from sending billing letters similar to Exhibit B in the future. Plaintiff also seeks statutory and actual damages.

## V.     CLASS ACTION ALLEGATIONS

29.     The named Plaintiff brings this action individually and in a representative capacity pursuant to Rules 1.220(b)(2) and (b)(3) of the Florida Rules of Civil Procedure for CARESPOT's

breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")

and FCCPA, for both damages and injunctive relief; and under the Florida common law of unjust

enrichment and negligence, on behalf of a proposed class defined as:

> All Florida residents who requested a copy of their medical records in electronic format pursuant to the HITECH Act, and paid a CARESPOT invoice for more than $6.50.

30.     The members of the Plaintiff Class are so numerous that joinder is impracticable.

On information and belief, CARESPOT has charged and collected excessive fees for requests for

electronically stored medical records in electronic format and class membership numbers in the

hundreds.

31.     There are questions of law and fact common to the Plaintiff Class that predominate

over questions affecting only individual class members.  Such common questions of law and fact

include, but are not limited to:

a.     Whether CARESPOT systematically charged Plaintiff and the Class for

electronic medical records in electronic format in amounts in excess of $6.50.

b.     Whether CARESPOT calculated and charged the actual labor costs to

fulfill Plaintiff's request, including any applicable supply (e.g., paper, or CD or

USB drive) or postage costs;

c.     Whether CARESPOT charged the average labor costs to fulfill standard

types of access requests that were developed by a schedule of costs, including any

applicable supply (e.g., paper, or CD or USB drive) or postage costs;

d.     Whether CARESPOT deceptively charging Plaintiff and the Class members

the copy charges for the Florida Patient Records Rule for a HIGHTECH electronic

records request constitutes an Unfair Trade Practice in violation of the Florida Deceptive and Unfair Trade Practices Act;

e.      Whether Defendants violated the FCCPA by attempting to collect amounts that it knew were not legitimate;

f.      Whether Plaintiff and the Class are entitled to a permanent injunction for CARESPOT's FDUTPA and FCCPA violations; and

g.      Whether CARESPOT has been unjustly enriched by collecting illegal fees from Plaintiff and members of the Plaintiff Class.

32.     Plaintiff's claims against CARESPOT are typical of the claims of the Plaintiff Class because they arise from the same course of conduct by CARESPOT. The excessive fees charged for electronic medical records requested at issue were uniformly and systematically charged and collected from consumers, despite not being authorized by the HITECH Act or the FCCPA. Because Plaintiff and each member of the Class received itemized customer invoices that were returned to CARESPOT with payment, there will be no difficulty determining class membership or individual damages in this matter.

33.     Plaintiff will fairly and adequately protect the interests of the Class, is familiar with the allegations expressed herein, and is able to assist in decision making necessary for the conduct of this litigation. Plaintiff has retained counsel qualified, experienced and able to conduct Class Action litigation.

34.     A Class Action is maintainable under Florida Rules of Civil Procedure 1.220(a), 1.220(b)(2) and (b)(3), because if each Class Member were required to pursue an individual action to recover the excessive fees for electronic medical record requested in electronic format, it would be economically unfeasible for many members of the Class to vindicate their respective rights.

35.     Class members' individual damages are small relative to the burden and expense of filing and litigating possibly hundreds of individual cases against this sophisticated Defendant. Accordingly, a Class Action is not only an appropriate method for litigating this matter, but is the superior method for the fair, consistent and efficient adjudication of this controversy.

## COUNT I
### Violation of Florida's Deceptive and Unfair Trade Practices Act
### (On Behalf of the Class)

36.     Plaintiff re-alleges and incorporates paragraph 1 through 35 as if fully set forth herein.

37.     This is a claim against CARESPOT for violation of Florida's Deceptive and Unfair Trade Practices Act, § 501 et seq., ("FUDTPA").

38.     The FDUTPA was adopted to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," and that as a rule of construction, FDUTPA "shall be construed liberally to promote policies." Fla. Stat. § 501.202.

39.     Under FDUTPA, violations of other laws, statutes, rules, regulations or ordinance designed to prohibit unfair, deceptive, or unconscionable acts or practices, but which do not themselves contain a private cause of action can be used to create a private cause of action under FDUTPA. Fla. Stat. § 501.203(3)(c).

40.     Plaintiff and the Class are consumers as defined in Fla. Stat. § 501.203(7).

41.     CARESPOT is engaged in "trade or commerce: as defined in Fla. Stat. § 501.203(8).

42.     CARESPOT violated the HITECH Act 45 CFR 164.524 (c)(4) by charging and collecting for electronic medical records requests from Plaintiff and the Class amounts in excess

of 45 CFR 164.524 (c)(4)'s authorized charges, and amounts that did not charge (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50.

43.     Instead, CARESPOT deceptively charged Plaintiff the amounts authorized for paper copy medical record requests under the Florida Patient Records Rule, which is $1 per page for the first 25 pages and 25¢ per page after the first 25 pages.

44.     By charging and collecting from Plaintiff and the Class amounts that were not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50, CARESPOT has committed unfair acts or practices in the conduct of its trade or commerce within the State of Florida.

45.     As a direct and proximate result of CARESPOT's unlawful and deceptive activity, Plaintiff and the Class have suffered actual damages as they were required to pay and did pay for HITECH electronic medical records requests in electronic format charges that exceeded (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50.

WHEREFORE, Plaintiff and the Class demand judgment against CARESPOT for any and all actual damages, together with interest both prejudgment and post-judgment, costs and attorneys' fees pursuant to Fla. Stat. § 501.2105, and such other further relief as the Court may deem just and proper.

## COUNT II
### Violation of Florida's Deceptive and Unfair Trade Practices Act Injunctive Relief
### (On Behalf of the Class)

46.     Plaintiff re-alleges and incorporates paragraph 1 through 35 as if fully set forth herein.

47.     This is a claim against CARESPOT for violation of FDUTPA, for injunctive relief pursuant to Fla. Stat. § 501.211(1). FDUTPA permits a claim for injunctive relief by "anyone aggrieved" by an unfair or deceptive act, which has occurred, is now occurring, or is likely to occur in the future. Fla. Stat. § 501.211(1). Accordingly, regardless of whether an aggrieved party can recover "actual damages" under section 501.211(2), it may obtain injunctive relief under section 501.211(1). *See* Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc., 2012 WL 3870405, Case No. 5D11-1577 (Fla. 5th DCA September 7, 2012).

48.     The FDUTPA was adopted to "protect the consuming public ... from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," and that as a rule of construction, FDUTPA "shall be construed liberally to promote policies." Fla. Stat. § 501.202.

49.     Under FDUTPA, violations of other laws, statutes, rules, regulations or ordinance designed to prohibit unfair, deceptive, or unconscionable acts or practices, but which do not themselves contain a private cause of action can be used to create a private cause of action under FDUTPA. Fla. Stat. § 501.203(3)(c).

50.    Plaintiff and the Class are consumers as defined in Fla. Stat. § 501.203(7).

51.    CARESPOT is engaged in "trade or commerce: as defined in Fla. Stat. § 501.203(8).

52.    CARESPOT violated the HITECH Act 45 CFR 164.524 (c)(4) by charging and collecting for electronic medical records requests from Plaintiff and the Class amounts in excess of 45 CFR 164.524 (c)(4)'s authorized charges, and amounts that did not charge (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50.

53.    Instead, CARESPOT deceptively charged Plaintiff the amounts authorized for paper copy medical record requests under the Florida Patient Records Rule, which is $1 per page for the first 25 pages and 25¢ per page after the first 25 pages.

54.    By charging and collecting from Plaintiff and the Class amounts that were not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50, CARESPOT has committed unfair acts or practices in the conduct of its trade or commerce within the State of Florida.

55.    As a direct and proximate result of CARESPOT's unlawful and deceptive activity, Plaintiff and the Class have been harmed.

56. Accordingly, Plaintiff and the Class request injunctive relief prohibiting CARESPOT from charging HITECH electronic record requests in electronic format charges amounts that are not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50

WHEREFORE, Plaintiff and the Class demand judgment against CARESPOT for injunctive relief pursuant to Fla. Stat. § 501.211(1), costs and attorneys' fees pursuant to Fla. Stat. § 501.2105, and such other further relief as the Court may deem just and proper.

## COUNT III
### Florida Consumer Collection Practices Act Fla. Stat. § 559.55 *et seq.* ("FCCPA")
### (On Behalf of the Class)

57. Plaintiff re-alleges and incorporates paragraph 1 through 35 as if fully set forth herein.

58. At all times material herein, Plaintiffs and the Class members were "debtors" and "consumers" as defined by Fla. Stat. § 559.55(8).

59. At all times material herein, Plaintiffs' alleged debt and the debt of the Class members were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

60. At all times material herein, Defendants were "persons" as referred to under Fla. Stat. § 559.72.

61. FCCPA sections 559.72(7) and (9) provide:
In collecting consumer debts, no person shall:

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

14

62.     CARESPOT sent Plaintiff and all class members a similar, if not identical billing letters.

63.     CARESPOT has violated Fla. Stat. § 559.72(9) by asserting a legal right they knew did not exist, by falsely asserting the right to charge amounts for requested HITECH electronic medical records that are not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50.

64.     As a direct and proximate result of Defendants' FCCPA violations, Plaintiff and the Class has been harmed.  Plaintiffs and the Class are entitled to actual damages, statutory damages, and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

65.     In addition, Plaintiff and the Class seek injunctive relief prohibiting CARESPOT from sending out billing letters in the manner described above in the future.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of the Class)**

66.     Plaintiff re-alleges and incorporates paragraph 1 through 35 as if fully set forth herein.

67.     The HITECH Act, established an individual right to obtain an electronic copy of medical records for a reasonable cost-based fee pursuant to 45 CFR 164.524 (c)(4)'s authorized charges.

68.     Under Florida law the elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant

15

voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.' " *Agritrade, LP v. Quercia*, 253 So.3d 28, 33, 42 Fla. L. Weekly D2514, D2516 (Fla. 3d DCA Nov. 29, 2017) (quoting *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla.*, 667 So.2d 876, 879 (Fla. 3d DCA 1996) ), rev. denied, No. SC17-2294, 2018 WL 1256501 (Fla. Mar. 12, 2018).

69.     On March 26, 2016, the United States Department of Health and Human Services ("HHS") determined and advised all covered entities and their business associates that unless they want to charge actual costs or average costs for the production of electronically stored medical records in electronic format pursuant to 45 CFR 164.524 (c)(4)'s authorized charges, the most they can charge is $6.50.

70.     Based on CARESPOT's services of producing Plaintiff's and the Class' electronically stored medical records in electronic format as requested by Plaintiff, CARESPOT created invoices and charged the Plaintiff and class members amounts that are not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50, for Plaintiff and class members requested HITECH electronic medical records.

71.     The purpose of these invoices was to misrepresent the actual amount owed by Plaintiff and the Class for the production of their electronically stored medical records, thereby requesting payment by deceit from the Plaintiff and the class members.

72.    The invoiced charge to Plaintiff was unreasonable, illegal, and unlawful, as it was in violation of the HIGHTECH ACT, FDUTPA, and FCCPA.

73.    Plaintiff and the Class relied on CARESPOT's invoices and paid them.

74.    Plaintiff, individually and on behalf of the Class, seeks recovery of the overpayments in excess of (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50, for Plaintiff and class members request HITECH electronic medical records request. authorized charges, as well as interest, reasonable attorney's fees, expenses, and costs to the extent allowable, and any other relief necessary to make them whole.

## COUNT V
## NEGLIGENCE
### (On Behalf of the National Class)

75.    Plaintiff re-alleges and incorporates paragraph 1 through 35 as if fully set forth herein.

76.    This Count for negligence against CARESPOT is because (i) it owed a statutorily-imposed duty to abide by the HITECH Act; (ii) it breached that duty; (iii) its breach was the proximate cause of damage to Plaintiff and the Class; and (iv) Plaintiff and the Class suffered damages caused by the breach.

77.    CARESPOT had a statutory duty to only charge 45 CFR 164.524 (c)(4)'s authorized charges for electronically stored medical records requested in electronic format as set forth specifically in 42 U.S.C. § 17935 (e) and 45 CFR 164.524 (c)(4), which was clarified by the

HHS's March 26, 2016 guidance letter that clarified that the only permitted charges are  (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50.

78.    CARESPOT breached its duty to abide with the above referenced HITECH Act by charging and collecting from Plaintiff and the Class amounts that are not (1) the calculated actual labor costs to fulfill the request, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, (2) an amount from a developed schedule of costs for labor based on average labor costs to fulfill standard types of access requests, including any applicable supply (e.g., paper, or CD or USB drive) or postage costs, or (3) an amount equal to or below $6.50, from Plaintiff and class members' requests for HITECH electronic medical records.

79.    This breach of duty resulted in damages to Plaintiff and the Class in the form of payment of illegal fees.

### Prayer For Relief

80.    WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered against Defendant CARESPOT as follows:

      A. Enter an order certifying the proposed Class, designating Plaintiff as the class representative, and designating the undersigned as Class counsel;

      B. Declare that CARESPOT is financially responsible for notifying all Class members of the excessive fees charged for requests for electronic medical records in electronic format;

C. Declare that CARESPOT must disgorge, for the benefit of the Class, all ill-gotten profits it received from charging amounts in excess of HITECH ACT authorized charges for requests for electronic medical records in electronic format, or order CARESPOT to make full restitution to Plaintiff and the members of the Class;

D. Adjudging that Defendants violated the FCCPA, Fla. Stat. §§ 559.72(7) and (9), and awarding Plaintiff and Class members actual damages and statutory damages pursuant to Florida Statutes § 559.77(2);

E. Adjudging that Defendants violated the FDUTPA, Fla. Stat. §501.201, *et seq.*, and awarding Plaintiff and Class members actual damages, attorneys' fees, and costs under Fla. Stat. § 501.2105 and Fla. Stat. § 501.211, as well as injunctive and declaratory relief under Fla. Stat. § 501.211;

F. For economic and compensatory damages on behalf of Plaintiff and all members of the Class;

G. For actual damages sustained;

H. For punitive or exemplary damages;

I. For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

J. For such other and further relief as this Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues triable at law by a jury.

Respectfully submitted this 3rd day of May, 2019.

**Varnell & Warwick, P.A.**

By: /s/ Brian W. Warwick
Brian W. Warwick; FBN: 0605573
Janet R. Varnell; FBN: 0071072
P.O. Box 1870
Lady Lake, FL 32158
Telephone: (352) 753-8600
bwarwick@varnellandwarwick.com
jvarnell@varnellandwarwick.com
kstroly@varnellandwarwick.com

**The Law Office of William J. Scott, P.A.**
William J. Scott, FBN: 604010
2716 Herschel Street
Jacksonville, FL 32205
Telephone: (904) 398-9995
Facsimile: (904) 358-4007
wjscott.service@wjscottlaw.com